FILED

2013 Dec-16  PM 12:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **AMY D. BLACKWOOD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 6:12-cv-02836-MHH** |
| | ) | |
| **HENDRIX HEALTH CARE** | ) | |
| **CENTER, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This opinion concerns a proposed FLSA settlement.  In her complaint, plaintiff Amy Blackwood contends that defendant Hendrix Health Care Center, Inc. violated provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. The parties have agreed to settle Ms. Blackwood's FLSA claim, and they have asked the Court to review the proposed settlement.  (Doc. 15).  The parties also move to dismiss the claims of two opt-in plaintiffs.  (Doc. 11).  For the reasons stated below, the Court approves the settlement because it is a fair and reasonable compromise of a bona fide dispute, and the Court will dismiss the claims of the opt-in plaintiffs.

## BACKGROUND

Ms. Blackwood filed this lawsuit on August 29, 2012.  (Doc. 1).  In her

complaint, she asserts that in 2010, she began working for Hendrix Health Care Center as a CNA.  (Doc. 1, ¶ 5).  Ms. Blackwood contends that she "regularly worked forty hours or more in a work week, but her overtime work was "off the clock" because Hendrix Health did not allow her to "clock in until seven minutes before the start of" her shift, even though she often began working as much as one-half hour before her shift started, and because Hendrix Health "automatically deducted thirty minutes for an unpaid meal break," but the company did not provide an uninterrupted meal break.  (Doc. 1, ¶¶ 11-12, 14-16).  She alleges that she last earned $10.20 per hour for the work that she performed for Hendrix Health.  (Doc. 1, ¶ 7).  Ms. Blackwood framed her lawsuit as an opt-in collective action "pursuant to FLSA 16(b)," describing potential class members as non-exempt Hendrix Health employees whose wages fell below the Federal Minimum Wage threshold because Hendrix Health allegedly did not pay them for certain work.  (Doc. 1, ¶¶ 21-29).

Hendrix Health admits that the FLSA authorizes this action and that the Court has subject matter jurisdiction over Ms. Blackwood's claims.  (Doc. 6, ¶1). Hendrix Health also concedes that Ms. Blackwood sometimes worked more than 40 hours in a week, but the company contends that Ms. Blackwood, "was paid for all overtime hours that she worked at her overtime rate."  (Doc. 6, ¶ 9).  Hendrix

Health denies that Ms. Blackwood is entitled to relief under the FLSA, and the company raises a number of affirmative defenses. (Doc. 6).

Hendrix Health produced to Ms. Blackwood her time and pay records and other information relevant to her claims. After studying those records, the parties negotiated a settlement, and they filed a joint motion for court approval of the proposed settlement agreement. (Doc. 15). The parties have represented to the Court that they believe that the agreement reflects a fair and reasonable compromise of their dispute. (Doc. 15, p. 3).

In exchange for dismissal of the claims against it with prejudice, Hendrix Health has agreed to settle Ms. Blackwood's FLSA claim for $7,600.00. The $7,600.00 consists of $2,385.00 in back wages, $2,385.00 in liquidated damages, and $2,830.00 in attorney fees. (Doc. 15, p. 3). The parties assert that these settlement payments represent a compromise of a bona fide dispute. (Doc. 15, p. 4).

Before Ms. Blackwood finalized a proposed settlement with Hendrix Health, two Hendrix Health employees opted in to this action as individual plaintiffs. (Doc. 10). To facilitate this settlement and the resolution of this action, Ms. Blackwood asks the Court to dismiss the claims of the opt-in plaintiffs. (Doc. 11). She contends that in the three years preceding her lawsuit, neither opt-in

3

plaintiff worked more than forty hours in a work week. (Doc. 11, p. 2). Ms. Blackwood asserts that she no longer wishes to pursue this lawsuit as a collective action. (Doc. 11, p. 1).

On this record, the Court considers the parties' motion to approve the proposed settlement of Ms. Blackwood's FLSA claim and Ms. Blackwood's motion to dismiss two opt-in plaintiffs.

**DISCUSSION**

**1.    Ms. Blackwood's FLSA claim.**

"Congress enacted the FLSA in 1938 with the goal of 'protect[ing] all covered workers from substandard wages and oppressive working hours.' Among other requirements, the FLSA obligates employers to compensate employees for hours in excess of 40 per week at a rate of 1 ½ times the employees' regular wages." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2162 (2012) (quoting *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981)); *see also* 29 U.S.C. §§ 202, 207(a). Congress designed the FLSA "to ensure that *each* employee covered by the Act would receive '[a] fair day's pay for a fair day's work' and would be protected from 'the evil of 'overwork' as well as 'underpay.'" *Barrentine*, 450 U.S. at 739 (emphasis in original). In doing so, Congress sought to protect, "the public's independent interest in assuring that

4

employees' wages are fair and thus do not endanger 'the national health and well-being.'" *Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (quoting *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706 (1945)).

If an employee proves that his employer violated the FLSA, the employer must remit to the employee all unpaid wages or compensation, liquidated damages in an amount equal to the unpaid wages, a reasonable attorney's fee, and costs.  29 U.S.C. § 216(b).  "FLSA provisions are mandatory; the 'provisions are not subject to negotiation or bargaining between employer and employee.'" *Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) (quoting *Lynn's Food Stores, Inc. v. U.S. ex. Rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)); *see also Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 (1945).  "Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputedly owed under the FLSA." *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011).

Consequently, parties may settle an FLSA claim for unpaid wages only if there is a bona fide dispute relating to a material issue concerning the claim.  To compromise a claim for unpaid wages, the parties must "present to the district court a proposed settlement, [and] the district court may enter a stipulated

5

judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353*; see also Hogan*, 821 F. Supp. 2d at 1281-82.[1]  "[T]he parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010).  The information that the parties provide also should enable the Court "to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy." *Hogan*, 821 F. Supp. 2d at 1282.  "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute," then a court may approve a settlement.  *Lynn's Food*, 679 F.2d at 1354; *see also Silva*, 307 Fed. Appx. at 351 (proposed settlement must be fair and reasonable).

---

[1] In *Lynn's Food*, the Eleventh Circuit Court of Appeals explained, "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees.  First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them.  An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.  The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations.  When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness."  679 F.2d at 1352-53 (footnotes omitted).  The Eleventh Circuit recently reiterated the import of *Lynn's Food*.  *See Nall v. Mal–Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013).

Based on the Court's review of the proposed settlement agreement and the information that the parties submitted regarding the terms of the proffered settlement, the Court finds that there is a bona fide dispute in this matter that supports the proposed settlement.   The settlement proceeds represent a fair and reasonable compromise based on the existing evidence regarding unpaid wages.  If they accepted Ms. Blackwood's testimony, reasonable jurors could award her actual and liquidated damages.  The amount of a damage award is uncertain because there is little documentation of the hours that Ms. Blackwood worked during her lunch breaks.  (Doc. 18, p. 1).  Consequently, the settlement is fair and reasonable under the circumstances of this case.[2]

_____

[2] The Court approves the final draft of the settlement agreement that the parties submitted to the Court.  The Court was not willing to approve the parties' original agreement because it contained provisions that generally are not appropriate in FLSA settlement agreements.  For example, the settlement agreement initially contained a confidentiality provision and a general release provision.  "[C]onfidentiality clauses and pervasive release provisions generally render a FLSA settlement agreement unfair and unreasonable." *Vinson v. Critter Control, Inc.*, 2012 WL 6737508, at *2 (S.D. Ala. Dec. 28, 2012); *Hogan*, 821 F. Supp. 2d at 1282 (same).  Confidentiality provisions in FLSA settlements are particularly problematic because they "have the potential to hinder unfairly the congressional goal of universal compliance with the FLSA," thereby affecting both the private and public interests that the FLSA protects. *Id.*; *see also Stalnaker*, 293 F. Supp. 2d at 1264 ("Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'") (quoting *Brooklyn Savings Bank*, 324 U.S. at 706); *Dees*, 706 F. Supp. 2d at 1242 ("a

## 2.     Dismissal of Opt-In Claims

In anticipation of her settlement with Hendrix Health, Ms. Blackwood asked the Court to dismiss the action's two opt-in plaintiffs, Tammy Stromatt and Wynnel Vickery.  (Doc. 11).  In *Adams v. School Bd. of Hanover County*, 2008 WL 5070454 (E.D. Va. Nov. 26, 2008), the district court observed that, "[n]o published case discusses the procedures a court must undertake when a party who has opted-in seeks to withdraw." *Id.* at *17.

> The few opinions that address an FLSA opt-in plaintiff's motion to withdraw make clear that FLSA plaintiffs may neither casually invoke the opt-in mechanism nor subsequently remove themselves from an FLSA action without seeking leave of court.  Congress amended the FLSA in 1947 to include the opt-in provision in order to prevent 'large group actions ... brought on behalf of employees who had no real involvement in, or knowledge of, the lawsuit.' *Cameron-Grant v. Maxim Healthcare Servs., Inc.,* 347 F.3d 1240, 1248 (11th Cir. 2003) (citation omitted). Thus, the opt-in provision ensures that 'no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he [or she] has affirmatively 'opted into' the class; that is, given his [or her] written, filed consent.' *LaChapelle v. Owens-Ill, Inc.,* 513 F.2d 286, 288 (5th Cir. 1975) . . .

---

confidentiality provision furthers resolution of no bona fide dispute between the parties; rather, compelled silence unreasonably frustrates implementation of the 'private-public' rights granted by the FLSA and thwarts Congress's intent to ensure widespread compliance with the statute.").  The Court recognizes that there may be instances in which confidentiality provisions and other pervasive release provisions may be appropriate, but those instances are rare, and the parties must provide compelling reasons for the Court to approve an agreement containing such provisions.  *Stalnaker*, 293 F. Supp. 2d at 1264; *Crabtree v. Volkert, Inc.,* 2012 WL 6093802 (S.D. Ala. Dec. 7, 2012).

When a party files written consent to opt-in, as the moving parties have already done, they become parties to the litigation . . . The Fourth Circuit has noted that "[t]he purpose of the consent forms is 'to make ... uncertain plaintiffs certain, and actual participants, so that defendants could know the parties and the charges with which they were to be faced." [*Lee v. Vance Exec. Protection, Inc.*, 7 Fed. Appx. 160 (4th Cir. 2011)] at *6 (*quoting Deley v. Atl. Box & Lumber Corp.,* 119 F.Supp. 727, 728 (D.N.J.1954).

*Adams*, 2008 WL 5070454 at *17-18.

In *Adams*, the district court decided that because it, at the parties' request, had not certified an FLSA collective class yet, there was "no bar against these Plaintiffs choosing to withdraw their opt-in status." *Adams*, 2008 WL 5070454 at *18. There were, however, consequences. "[U]pon opting out, the withdrawing Plaintiffs should lose both the detriment and any benefit of participating in this case." *Id.* at *19.  In reaching this conclusion, the district court considered its power, "'to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise' in violation of statutes or rules. *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Because of a potential for abuse, a court has 'both the duty and the broad authority to exercise control ... governing the conduct of counsel and the parties.' *Id.* at 171." *Id.*

Although the Court does not sanction the practice of having plaintiffs opt-in to an FLSA action and then opt-out less than two months later, purportedly

9

because neither opt-in plaintiff worked more than forty hours in a work week during the time period relevant to this lawsuit, the Court will grant Ms. Blackwood's request to dismiss the opt-in plaintiffs' claims.  The Court has not certified an opt-in class, so there is no obstacle to the opt-in plaintiffs' decision to dismiss their claims.  The Court assumes that plaintiff's counsel has advised the opt-in plaintiffs of the risks attendant to dismissing their claims.

**CONCLUSION**

For the reasons stated, the Court approves the parties' proposed settlement of Ms. Blackwood's FLSA claims.  The Court concludes that there is a bona fide dispute and that the terms that the parties have negotiated constitute a fair and reasonable resolution of that dispute.  The Court will enter a separate order dismissing Ms. Blackwood's FLSA claims with prejudice.  The Court also will dismiss the opt-in plaintiffs' claims without prejudice.

**DONE** and **ENTERED** this 16th day of December, 2013.

MADELINE HUGHES HAIKALA
U.S. DISTRICT JUDGE

10